By the Court.—Freedman, J.
Upon a careful examination of the whole case I fail to see how the judgment can be sustained.
According to the clear weight of the evidence the transaction between the plaintiff and the defendant which resulted in the receipt by the plaintiff of the sum of $2,000, was a loan, and not a gift. The plaintiff himself so characterized it in a certain part of his testimony, and in confessing judgment he so swore. If that, then, was the true character of the transaction, the plaintiff was under a legal obligation to repay, and hence, the pretended waiver of a defense which did not *78 exist to the knowledge of the plaintiff, and the confession of judgment, constituted no sufficient consideration for the defendant’s promise that, in case of her redemption of the premises, she would redeem, not for herself, but for the benefit of the plaintiff.
In the second place, assuming that the transaction was a gift, the plaintiff, by falsely swearing in the confession of judgment that it was a loan, and then agreeing with the defendant that the confession should be used by her for his benefit in the redemption of the premises from the claim of a bond fide creditor who otherwise would have become entitled to a deed, was guilty of a fraud upon such creditor. In this aspect the case presents the anomalous feature of a party guilty of fraud appealing to a court of equity to assist him to consummate it/
In the third place, the conclusions arrived at by the learned referee are erroneous, because the alleged agreement to redeem for plaintiff’s benefit was not in writing. The referee held the agreement to be valid, and then he proceeded upon the theory that the defendant, by the conveyance from the sheriff, became vested with all the estate, right, title and interest of the plaintiff in and to the lands described in the complaint, in trust to retain the legal title of the same until such time as the plaintiff should desire a conveyance of said interest to himself, and should pay the defendant the amount of her judgment against him, and repay all sums paid out by her to effect the redemption.
By the statute of this State concerning uses and trusts, all uses and trusts were abolished except as authorized and modified by it (2 R. S. [6 ed.] 1105, § 45), and the trust claimed in the case at bar does not fall within the saving clause, unless it is a trust arising or resulting by implication of law from the transaction between the parties. This in turn depends upon the nature and character and validity of the agreement be *79 tween them, and right here the plaintiff encounters another difficulty. The statute concerning fraudulent conveyances and contracts relative to lands, provides : (1) That no estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power, over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing (3 R. S. 6 ed. 141, § 6). (2) That every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made (Id. § 8). (3) That every grant or assignment of any existing trust in lands, goods or things in action, unless the same shall be in writing, subscribed by the party making the same, or by his agent lawfully authorized, shall be void (Id. 145, § 2).
The first two provisions are subject to the exception that nothing contained in them shall be construed to abridge the powers of courts of equity to compel the specific performance of agreements, in cases of part performance of such agreements (Id. § 10).
It is conceded that the agreement in question was never reduced to writing, and that no written note or memorandum of any kind concerning it was ever made ; but the plaintiff relies upon the exception expressly made by the statute. It therefore becomes important to consider the doctrines by which courts of equity are guided in the class of cases therein referred to.
The best way to enter upon, the discussion, is to start with the general proposition that a court of *80 equity cannot in general specifically enforce a contract embraced by the statute of frauds, any more than a court of law can give damages for its non-performance. But courts of equity have always been clothed with the salutary power of preventing fraud, or affording positive relief against its consequences ; and this power they have not hesitated to exercise, by compelling the specific execution of a verbal contract to which the provisions of the statute of frauds apply, where the refusal to execute it would amount to practicing a fraud. In so doing they disclaim the power of en-grafting exceptions upon the statute, but proceed upon# the ground that to prevent fraud is their supreme duty as courts of equity and conscience. The general rule may therefore be stated to be that when the statute of frauds has been used or is about to be used as a cover to a fraud, equity will relieve or protect against the fraud, notwithstanding the provisions of the statute ; but in the absence of fraud equity will not interfere, though there may have been a reliance upon the honor or promise of the defendant.
When this general rule is kept in mind, it becomes obvious that the mere circumstance that a verbal agreement has been in part performed, can afford no reason such as to control the action of any court, whether of law or equity, for holding the parties bound to perform what remains executory. The doctrine of equity in such cases is, that where an agreement has been so far executed by one party, with the tacit encouragement of the other, and relying upon his fulfillment of it, that for the latter to repudiate it and shelter himself under the provisions of the statute would amount to a fraud upon the former; that fraud will be defeated by compelling him ,to carry out the agreement (Browne on Frauds, § 448, and cases there cited).
The'right of a party who has done acts in part execution of a verbal contract, to call upon a court of equity to enforce it against the other, is subject to the *81 ■same general restrictions as that of any other plaintiff in equity, and he therefore must show, among other things, that his position is such that an action at law for damages will not afford him adequate relief {Browne on Frauds, § 452, and cases cited).
It is mainly for the reason last stated that it became settled, too firmly for question, that payment, even to the whole amount of the purchase-money, is not to be deemed part performance, so as to justify a court of ■equity in enforcing 'the contract (Browne on Frauds, § 461; Story Fq. Jur. §§ 760, 761; Rice v. Peet, 15 Johns. 503 ; Thayer v. Rock, 13 Wend. 53).
The money, it is said, may be recovered back by action and the parties restored to their original position. It is only when, from the nature of the payment, or the peculiar circumstances of the case, this cannot be done, that the rule would seem to fail with the reason of it. Thus payment, although alone not sufficient, may serve to corroborate other acts which are generally regarded as amounting to part performance, so as to afford ground for a decree of specific execution. Where, for instance, it is accompanied by a purchaser’s entering into possession of land in pursuance of a verbal contract for the purchase of it, a case of part performance is quite uniformly considered as made out. So it is always regarded as strongly confirmatory of right of plaintiff seeking the specific execution of a verbal contract, for an estate in land, that he has proceeded, on the faith of the contract, and with the knowledge of the vendor, to expend money in improving the land. But in order to be admitted asan act of part performance, the improvements relied upon must be of a kind permanently beneficial to the estate, and involving a sacrifice to the purchaser who has made them. For so discriminating is equity that, if it appears that the purchaser gained more by the possession and use of the land, than he had lost by his *82 improvements, or if he has been in fact fully compensated for the improvements, they will not be available to him as a ground for specific execution.
Prom the examination so far made it appears with sufficient certainty that the plaintiff in the case at bar, in order to sustain the action, was bound to show not only an agreement valid but for the statute of frauds, but also, in order to overcome the statute, such a part performance on his part as raised such a clear and real equity in his favor that, unless he were relieved, he would be the victim of a fraud. Now, what are the facts in that respect ?
Under the first judgment, entered February 23, 1854* and the execution issued thereon, the sheriff of the city and county of New York, on November 18, 1854, sold to Benjamin M. Stilwell, the judgment-creditor, for a consideration of $750, all the right, title and interest that the plaintiff herein had on January 23, 1854, or at any time thereafter, in the lands devised by John W. Gilbert, deceased, of which sale the sheriff executed and delivered his certificate to Stilwell on the same day. The time for the plaintiff, as judgment-debtor, to redeem the lands in question from that sale, expired on November 18, 1855, and the time for any of his judgment-creditors to effect such redemption, expired February 17,1856. The plaintiff failed to redeem. Indeed, he made not even an effort to do so within the time allowed bylaw for that purpose. After the time had expired, he made the parol agreement relied upon, and then confessed judgment in favor of the defendant for the sum of $2,005. At that time, therefore, he had in no event an interest left in the land. No claim or right, either vested or contingent, remained in him. All his interest in the land was as effectually cut off as if, for a valuable consideration, he had, years before, voluntarily conveyed it away. In that condition of things, and in order to regain at some future time an *83 interest in the land, he agreed with the defendant that by his act the defendant should be created a judgment-creditor, and that as such the defendant should redeem from Stilwell for his benefit, but with her own moneys. He expended no money on the faith of the agreement, and from the time it was entered into as claimed by him, to the time at which the defendant obtained a deed from the sheriff, the plaintiff did no act upon the faith of the agreement in regard to the premises, which left him in a worse position than he was in before. He was notin possession of the premises at the time, or any portion of them. In short, he parted with absolutely nothing, unless it can be said that his confession of judgment was a parting with value. The whole of plaintiff’s equity, therefore, turns upon the importance to be given to this confession, and if that did not raise an equity sufficient within the rule, as above laid down, the defendant’s promise, even if made as claimed by the plaintiff, was but a mere naked promise, the illegality of which is positively declared by the statute of frauds. How, as to such confession, I remarked at the outset that if the transaction which resulted in the receipt by the plaintiff of the sum of $2,000, was a loan, the pretended waiver of the defense, that it was a gift, which to the knowledge of the plaintiff did not exist, and the confession of judgment, constituted no sufficient consideration for the promise of the defendant; if it was a gift, the plaintiff, by falsely swearing that it was a loan, and agreeing with the defendant that the false statement should be used for his benefit, was himself guilty of a fraud. In no aspect of the case, therefore, can the confession be treated as a parting with value, or a part performance of the agreement on the part of the plaintiff, sufficient in equity to call upon the court to decree the specific execution of the agreement, which otherwise is void under the statute of frauds. Even if the plaintiff, instead of confessing *84 judgment, had actually paid the money, it would not have helped him; for I have shown that even payment of the purchase-money is not of itself a sufficient part performance of an agreement void under the statute of frauds. Moreover, the statute of uses and trusts expressly provides, that when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as alienee in such conveyance, except as against the creditors, at the time, of the person paying the consideration; and that a trust shall result in favor of such creditors to the extent necessary to satisfy their just demands .(1 R. S. 6 ed. 1105, 1106, §§ 51, 52).
The cases cited and relied upon by the learned counsel for the plaintiff are not in conflict with the foregoing views. In Hess v. Fox (10 Wend. 436), it was agreed between mortgagor and mortgagee that the mortgagor should convey by an absolute deed, and deliver up the mortgaged premises to the mortgagee ; that the latter should sell them at the best price obtainable, and after deducting the sum due, pay the surplus, if any, to the mortgagor. The premises having been conveyed, delivered up and sold, pursuant to the agreement, and a surplus realized, it was held that the agreement was not void as within the statute of frauds, and that the mortgagor might maintain assumpsit for the surplus.
In Malins v. Brown (4 N. Y. 403), it was agreed between vendor and vendee and mortgagee, that the mortgagee, upon receipt of $700, should release the premises about to be conveyed from the lien of the mortgage which covered them, with other lands, and the mortgagee did receive the $700, as a complete performance of the agreement on the part of the vendee. *85 The sale having been consummated upon the assurance that the release would be given, it was held that, upon the mortgagee’s failure to give it, the vendee could maintain an action for the specific execution of the agreement, because a recovery of the money would not restore him to his former position. In the course of his opinion, Taylor, J., fully recognized the doctrine that mere payment of money is not a sufficient part performance, and that nothing will be deemed part performance which does not put the party into a situation which is a fraud upon him unless the contract be performed.
Murray v. Smith (1 Duer, 412) was an action to recover the sum of $532.40, which the plaintiff had been compelled to pay as a deficiency upon foreclosure. Peter Murray and Hugh Smith were speculators together in the purchase and sale of lands. For eight lots conveyed to Murray by William P. Powers, Murray paid $516, in cash, and gave his bond and mortgage to Powers for $1,204. Murray subsequently conveyed to Smith one equal undivided half part of the eight lots, subject to one-half part of the mortgage, and as part of the consideration Smith paid $258 (being one-half of the sum paid by Murray in cash) and orally promised to keep Murray harmless and indemnified from all loss or damage by reason of the one equal half part of the money becoming due upon the mortgage. Murray subsequently paid his equal half part, and having thereafter been compelled to pay a deficiency arising upon a sale of the land under foreclosure of the mortgage, instituted for the collection of the other half, it was held, that Murray having executed his part of the agreement by a conveyance on the faith of the promise, the promise could be enforced.
In Dodge v. Crandall (30 N. Y. 294) it was orally agreed between Holberton, plaintiff’s testator, and Holcomb, the owner of the equity of redemption, who *86 as such, had assumed the payment of a certain mortgage then past due, that, in consideration of $50 to be paid by Holcomb, Holberton should buy the bond and mortgage of the then holder thereof, and take an assignment thereof and hold the same for the term of five years, and that Holcomb should have five years within which to pay ; and the agreement was executed on the part of Holberton by taking such an assignment, and on the part of Holcomb by paying the $50. Upon these facts it was held that, there having been a good consideration and the contract having been executed as stated, there was a valid extension of the time of payment for the period of five years, and that, in the absence of a default in the payment of the interest, there could be no foreclosure on account of the non-payment of the principal sum due before the expiration of that time.
In Dodge v. Wellman (43 How. Pr. 427) the defendant was the equitable owner and as such in possession of the land in question. ' He held an agreement, valid in law and in equity, for the conveyance to him of the legal title on payment of the price. That price he had in part paid, and had, in reliance upon his equitable title, cultivated the land as a farm and made improvements thereon. The residue of the purchase-money being about to become payable, a parol agreement was entered into between plaintiff’s testator and the defendant, that the testator should advance the money ($284), and take the conveyance to himself, and should give to the defendant a written agreement for the conveyance of the land on repayment of the money so advanced, with interest, at any time within five years. The defendant at once entered upon its performance. He surrendered to the original vendor his contract of purchase as a consideration for a conveyance to plaintiff’s testator, procured a conveyance to the latter and carried and delivered it to him, and the *87 testator thereupon advanced the money stipulated for. Subsequently the testator refused to give any contract or writing declaring the rights of the defendant, and ejectment having been brought by the executor, it was held that the principles upon which courts of equity enforce agreements that have been in part performed. were an adequate protection to the defendant, and that the facts stated constituted an equitable defense to the action.
Ryan v. Dox (34 N. Y. 307) was decided upon the principle that a statute cannot be invoked as a shield to protect a party in the perpetration cf a fraud. In commenting upon this case and the principle of its decision in the later case of Levy v. Brush (45 N. Y. 589), Grover, J., says: “Theposition, rightly unde:stood, is correct. This is the basis upon which the doctrine of specific performance of verbal contracts for the purchase of real estate by courts of equity, in cases of part performance, rests. Upon this principle, where a party whose lands were about to be sold by judicial sale has agreed with another to loan him money, and bid off and hold the land as a security for the money, and the agreement has been consummated, the vendee has been held to hold the title so acquired as a mortgage in equity. Upon these grounds Ryan v. Dox was decided. But no case can be found where a contract has been taken out of the statute in favor of a party who had no existing interest in the property, who had done no act of part performance, who had parted with nothing under the contract, simply upon the ground that the other party was guilty of a fraud in refusing to .perform his verbal agreement.”
In Freeman v. Freeman (43 N. Y. 34), the question, as expressly stated by the court, was whether a parol promise by one owning lands, to give the same to another, will be enforced in equity, when the promisee has been induced by the promise to go into possession, and, with the knowledge of the promisor, make comparatively *88 large expenditures in permanent improvements upon the land, and it was held that the ground upon which this equitable jurisdiction is exercised, although sometimes said to be part performance, really is to prevent a fraud being practiced upon the parol purchaser by the seller, by inducing him to expend his money upon improvements, upon the faith of the contract, and then deprive him of the benefit of the expenditure,, and secure it to the seller.
In Miller v. Ball (64 N. Y. 286), Earl, J., in delivering the unanimous opinion of the court of appeals, said: “The payment of the consideration alone, in a case where its recovery in an action at law would fully indemnify the party paying, would not be a sufficient part performance within the rule under consideration, and neither would mere possession be, without any other circumstances of hardship or fraud. But payment of the consideration, and possession under the agreement, or by the consent of the vendor, are facts which maybe considered with other facts upon the question of part performance. Here the whole consideration-money was paid, and the plaintiff took all the possession of such a lot which is ordinarily practicable. He built roads to it and upon it; built a shanty, and made some clearing. His improvements thus made were probably equal in cost to the consideration paid for the lot, and that cost would be lost to him unless the defendant be compelled to perform his agreement. He paid the taxes, and the money thus paid he cannot recover back. Iam, therefore, of opinion that enough was done by the plaintiff to bring his case within the equitable rule as to part performance.”
Instead of being at variance with the views expressed by me, the cases cited by the plaintiff fully harmonize with them and furnish additional support to them. And so does the case of Getman v. Getman (1 Barb. Ch. *89 499), which in many respects presents striking similarities with the case at bar.
Assuming, therefore, that there was such an agreement between the parties as found by the referee, and that the plaintiff performed his portion of it, yet such part performance being, in view of all the circumstances surrounding it and under the principles which control courts of equity in such cases, wholly insufficient to take plaintiff’s case out of the statute, the agreement was void, because not in writing, and there being no subsequent written declaration of trust, there is nothing whatever constituting ground for decreeing specific performance of defendant’s promise. A contract void by the statute is void for all purposes. It confers no right and creates no obligation as between the parties to it. It cannot be enforced, directly or indirectly (Dung v. Parker, 52 N. Y. 494).
For the foregoing reasons the conclusions of the referee in favor of the validity of the agreement and the existence of a trust, were and are erroneous. In the absence both of a writing and of circumstances amounting to a fraud upon the plaintiff, the void agreement could not become capable of enforcement, nor could a trust result in plaintiff’s favor by implication of law, nor could the defendant, in the absence of a legal obligation on her part to convey, be guilty of fraud by a mere refusal to do so.
Neither can the plaintiff’s tender of $4,322.67, to the defendant, on October 23, 1860, and his offer to perform, be construed as a part performance of the agreement. In Levy v. Brush (45 N. Y. 589), it was said: “To hold the offer of performance by the plaintiff to be sufficient to take the case out of the statute,' would repeal it. A party in no legal sense commits a fraud by refusing to perform a contract void by its provisions. He has not in that sense made a contract, and has a perfect *90 right, both at law and in equity, to refuse performance.”
The plaintiff having wholly failed to make out a case authorizing a judgment compelling specific performance of the defendant’s promise or agreement, it is unnecessary to consider the question raised by the defendant’s exception to the referee’s refusal to receive in evidence the plaintiff’s petition and schedules in bankruptcy, offered by the defendant.
The judgment appealed from must be reversed, the order of reference vacated, and a new trial ordered, with costs to the appellant to abide the event.
Russell and Arnoux, JJ., concurred.